IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:24-CV-280-FL

LANCE SALVAS RICHARDSON,

    Plaintiff/Claimant,

v().

FRANK J. BISIGNANO,
Commissioner of Social Security,

    Defendant.

MEMORANDUM AND
RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-15,[1] -18, -19]. Claimant Lance Richardson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. Briefing is complete, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant was previously awarded Child Disability Benefits, which were continued after a continuing disability review ("CDR") until his benefits were terminated in April 2021, due to his incarceration for a period exceeding twelve months. (R. 85, 537–39). Claimant protectively filed a new application for SSI on October 4, 2021, alleging disability beginning November 1, 1993.

---

[1] Claimant filed a motion pursuant to Fed. R. Civ. P. 56(c), [DE-14], and a memorandum in support, [DE-15], which the court construes as Claimant's brief pursuant to Rule 6 of the Supplemental Rules for Social Security Actions.

(R. 23, 149–55). The claim was denied initially and upon reconsideration. (R. 23, 84–103). A hearing before the Administrative Law Judge ("ALJ") was held on March 22, 2023, at which Claimant, proceeding without a representative, and a vocational expert ("VE") appeared and testified. (R. 43–70). On May 11, 2023, the ALJ issued a decision denying Claimant's request for benefits. (R. 20–42). On March 15, 2024, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is

2

limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

### IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since October 4, 2021, the application date. (R. 25). Next, the ALJ determined Claimant had the severe impairments of chronic obstructive pulmonary disease, essential hypertension, obesity, intellectual disorder, attention deficit hyperactivity disorder, and depression, and the nonsevere impairments of alcohol use disorder and gastroesophageal reflux disease. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26–29). Applying the special technique, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; adapting or managing oneself; interacting with others; and concentrating, persisting, or maintaining pace. (R. 27).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[2] with the following limitations:

> he can have occasional exposure to dust, odors, fumes, and pulmonary irritants. He can have no exposure to unprotected heights or moving mechanical parts. He can perform simple, routine, repetitive tasks but not at a production rate pace (i.e., assembly line work). He can make simple work-related decisions. He can have occasional interactions with supervisors, coworkers, and the public.

(R. 29–37). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence of record. (R. 31). At step four, the ALJ concluded Claimant had no past relevant work. (R. 37). However, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 37–38).

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, they can also do sedentary and light work. 20 C.F.R. § 416.967(c).

4

## V. DISCUSSION

Claimant contends that (1) the ALJ applied the incorrect legal standard to his claim; (2) alternatively, if the ALJ applied the correct legal standard, it was applied improperly to conclude Claimant's mental impairments did not meet or medically equal Listing 12.05C and failed to consider the totality of Claimant's impairments; and (3) the RFC is not supported by substantial evidence. Pl.'s Br. [DE-15] at 10–16;[3] Pl.'s Reply [DE-19]. Defendant contends that the ALJ applied the correct standard to Claimant's application for benefits and that substantial evidence supports the ALJ's findings. Def.'s Br. [DE-18] at 6–15.

### A. The Appropriate Legal Standard

After benefits have been awarded, the Commissioner generally may not terminate benefits for medical reasons unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. *See* 42 U.S.C. §§ 423(f), 1382c(a)(4)(A); 20 C.F.R. § 416.994. However, under 42 U.S.C. § 402(x)(1)(A)(i), benefits may not be paid to an incarcerated person convicted of a criminal offense. *See Brooks v. U.S. Dep't of Health & Hum. Servs., Soc. Sec. Admin.*, 900 F.2d 249 (4th Cir. 1990) ("42 U.S.C. § 402(x)(1) provides that social security benefits may be withheld from incarcerated felons . . . ."). And, if the suspension of benefits persists for twelve consecutive months, benefits are terminated, and a new application is required to reestablish eligibility for benefits. 20 C.F.R. § 416.1335; *see Hall v. Berryhill*, No. CV 2:16-583-BHH-MGB, 2017 WL 2805045, at *10 (D.S.C. June 13, 2017) ("If an individual remains a resident of a public institution for more than 12 consecutive months, the Social Security Administration ('SSA') will terminate his benefits.")

---

[3] The page numbers referenced are those found in the CM/ECF footer rather than the document's internal page number where, as here, they differ.

(citing 20 C.F.R. § 416.1335), *report and recommendation adopted*, 2017 WL 2797513 (D.S.C. June 28, 2017); SSA POMS SI 02301.205 (Suspension and Reestablishing Eligibility). The question presented here is what standard applies to a claimant's subsequent application after benefits were terminated for a non-medical reason, which appears to be a novel issue unaddressed by the Fourth Circuit Court of Appeals.

Claimant argues that because he was previously determined to be disabled, he is entitled to a presumption of continuing disability absent a showing of medical improvement that would allow him to engage in substantial gainful activity, which is assessed through the CDR framework found in 20 C.F.R. § 416.994. Pl.'s Br. [DE-15] at 7–12. The Commissioner counters that because Claimant's benefits were terminated for a non-medical reason, the ALJ appropriately considered the new application for benefits under the familiar five-step sequential evaluation found in 20 C.F.R. § 416.920 without any presumption of continuing disability.

The CDR framework, by its terms, is used to determine whether an individual "entitled to disability benefits" continues to be disabled. 20 C.F.R. § 416.994(a). Here, Claimant's benefits were previously terminated due to his incarceration lasting more than twelve months, so he was not an individual "entitled to disability benefits" at the time the ALJ considered his application, and the CDR framework, along with its medical improvement inquiry, was inapplicable to the newly filed claim. *See Russell v. Kijakazi*, No. CV 21-939, 2023 WL 2278651, at *4 n.11 (E.D. Pa. Feb. 27, 2023) (rejecting argument that claim for SSI benefits filed after prior award of benefits was terminated due to the plaintiff's incarceration should have been evaluated under a medical improvement standard for CDR); *Mckaughan v. Comm'r of Soc. Sec.*, No. 1:19-CV-0849 JLT, 2020 WL 5633031, at *3 (E.D. Cal. Sept. 21, 2020) (concluding that where the plaintiff's benefits were terminated for non-medical reasons and the plaintiff was required to file a new application

6

for benefits, the five-step sequential evaluation applied to the new claim, rather than the "medical improvement" standard applied to continuing disability reviews) (citing *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (rejecting the claimant's argument that his new applications "should have been treated as a reopening of his termination of benefits" and explaining the medical improvement standard only applies when the Commissioner is considering termination of benefits, "not in later applications for benefits"); *Harrell v. Bowen*, 862 F.2d 471, 477 (5th Cir. 1988) ("finding medical improvement . . . does not apply to new applications for disability benefits"); *Brennan v. Astrue*, 501 F. Supp. 2d 1301, 1309 (D. Kan. 2007) ("Because this case involved a new application rather than a continuing disability review, the ALJ applied the five-step sequential evaluation process provided in 20 C.F.R. § 416.920 rather than the seven-step medical improvement standard provided in 20 C.F.R. § 416.994 for continuing disability reviews" and "[t]here was no error in the failure to apply the medical improvement standard.")).

The cases cited by Claimant in support of applying the CDR framework are distinguishable because they involved the review of continued entitlement to benefits, which is not the case here where Claimant's benefits had already been terminated. *See Furdon v. Berryhill*, No. 5:18-CV-45-BO, 2019 WL 1117908, at *1 (E.D.N.C. Mar. 11, 2019) (applying the CDR framework where the claimant was awarded benefits in 2007, and the SSA performed a continuing disability review in 2015 and found the claimant had medically improved and was no longer disabled under the Act); *Sykes v. Colvin*, No. 5:15-CV-00228-RN, 2016 WL 3129174, at *2 (E.D.N.C. June 2, 2016) (applying the CDR framework where the claimant was awarded benefits in 2005 and the SSA found the claimant was no longer disabled in 2011 due to medical improvement). In *Sykes*, the court explained that "[t]he Secretary may not *terminate* benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairment that the claimant

7

becomes able to engage in substantial gainful activity." 2016 WL 3129174, at *2 (citing 42 U.S.C. § 1382c(a)(4)(A); 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994). Here, benefits had already been terminated for a non-medical reason, so the CDR framework for determining whether to continue or terminate benefits was inapplicable. Accordingly, Claimant's arguments that the Commissioner's decision should be reversed for payment due to failure to apply the proper standard and because Claimant did not experience medical improvement lack merit.

Claimant is also incorrect that Acquiescence Ruling 00-1(4) is applicable. Pl.'s Reply [DE-19] at 3–4. AR 00-1(4) was promulgated by the SSA in response to *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987) and *Albright v. Comm'r of the SSA*, 174 F.3d 473 (4th Cir. 1999), which addressed the scope of *res judicata* in Social Security disability cases, and provides, in relevant part, as follows:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

65 Fed. Reg. 1936-01, 1938, 2000 WL 43774 (Jan. 12, 2000). Importantly, AR 00-1(4) "applies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability . . . , *which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim*." *Id.* (emphasis added). Here, the prior disability determination was made at the initial review stage and not by an ALJ or the Appeals Council, (R. 85, 537–39); therefore, AR 00-1(4) does not apply. *See Lane v. Saul*, No. 1:20-CV-00267-RJC-DSC, 2021 WL 8053732, at *2 (W.D.N.C. July 28, 2021) (concluding that where a new claim was filed after prior benefits were terminated for a non-medical reason, AR 00-1(4) did not apply to the prior determination because it was made at the initial review level, and the ALJ

8

was not required to consider it) (citing *Lail v. Colvin*, 5:13-CV-00089-MR-DLH, 2014 WL 4793234, at *6 (W.D.N.C. Sept. 25, 2014)), *report and recommendation adopted sub nom. Lane v. Comm'r of Soc. Sec.*, 2022 WL 851728 (W.D.N.C. Mar. 22, 2022). This also forecloses Claimant's argument that remand is necessary for the Commissioner to supplement the record with Claimant's prior disability adjudication and evidence related to that claim, which Claimant contends is probative of continuing medical improvement, Pl.'s Br. [DE-15] at 13–14; Pl.'s Reply [DE-19] at 6, because the ALJ was not required to consider the prior initial review decision and, as discussed above, the CDR framework, including the question of medical improvement, is inapplicable. Accordingly, AR 00-1(4) does not apply to the instant claim, and the ALJ did not err in applying the five-step sequential evaluation rather than the CDR framework.

### B. The Listings

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even if an impairment does not meet the listing criteria, it may still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5); S.S.R. 17-2p, 2017 WL 1105349 (Mar. 27, 2017). The burden of demonstrating that an impairment meets or equals a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 813 (E.D.N.C. 2009). When "there is at least conflicting evidence in the record" as to whether a claimant satisfies a listing, the ALJ must explain a determination that the claimant's impairment does not meet or exceed the listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The ALJ cannot

"summarily conclude" that a listing is not satisfied because "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.*

Claimant contends that even if the ALJ applied the correct standard, it was improperly applied, and the ALJ erred in concluding Listings 12.04, 12.05, and 12.11 were not met; specifically, Claimant argues that his mental impairments satisfy Listing 12.05C[4] as a matter of law. Pl.'s Br. [DE-15] at 14; Pl.'s Reply [DE-19] at 6–11. The Commissioner defends the ALJ's decision in this regard as supported by substantial evidence. Def.'s Br. [DE-18] at 9–10.

The listings for mental disorders are arranged in eleven categories, and here the ALJ considered Listings 12.04, depressive, bipolar and related disorders; 12.05, intellectual disorder; and 12.11, neurodevelopmental disorders. 20 C.F.R. § 404, subpt. P, app. 1, § 12.00A.1. Listing 12.04 has three paragraphs (A, B, and C), and to meet this listing a claimant's impairment must satisfy either the A and B or the A and C criteria. *Id.* § 12.04. Listing 12.05 has two paragraphs (A and B), and the listing is met when a claimant's impairment satisfies the A or B criteria. *Id.* § 12.05. Listing 12.11 also has two paragraphs (A and B) and is met when both the A and B criteria are satisfied. *Id.* § 12.11. The B criteria are the same for each of these listings and require that a claimant's mental impairments result in one extreme limitation or two marked limitations in the four broad areas of functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* §§ 12.04, 12.05, 12.11.

---

[4] The listings of mental disorders were revised effective January 17, 2017, and among the changes was the elimination of Listing 12.05C. *Kiser v. Saul*, 821 F. App'x 211, 216 n.5 (4th Cir. 2020). Because this claim was filed in 2021, the ALJ appropriately applied the revised version of Listing 12.05, which contains only A and B criteria, 20 C.F.R. § 404, subpt. P, app. 1, § 12.05, and Claimant's argument that his mental impairments met or equaled Listing 12.05C and reliance on *Burt v. Colvin*, No. 5:12-CV-322-BO, 2013 WL 3761095 (E.D.N.C. July 16, 2013), which considered the prior version of Listing 12.05, are misplaced.

The ALJ determined that Claimant's mental impairments did not meet or equal the criteria of Listings 12.04, 12.05, or 12.11. (R. 26). The ALJ found that Claimant was only moderately impaired in each of the areas of functioning and, thus, did not meet the B criteria, explaining as follows:

> To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. He has a history of special education and received a high school certificate (Ex. 1F/110-118). He had a Revised Beta IQ of 67 (very low) (Ex. 1F/100-101), and a Full Scale IQ of 65 (Ex. 7F). He could read basic information and identify coins and make change up to $1.00. He was able to write letters and identify common signs in the community (Ex. 1F/98). Insight and judgment were limited (Ex. 1F/85, 95). However, his thought processes were clear, organized, and goal-directed (Ex. 1F/85; 5F, 7F, 10F). His recent and remote memory was intact (Ex. 1F/95, 10F).
>
> In interacting with others, the claimant has a moderate limitation. He reported he got "shaky handed" around four to five people. He said he sometimes got nervous around people (Hearing Testimony). However, he indicated he had no problems getting along with others (Ex. 6E). He was cooperative, friendly, and had good eye contact (Ex. 1F/100-101, 5F, 7F). His stated he lived with his mother, went shopping with his grandmother, and got along with his family (Ex. 7F).
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. He has had racing thoughts (Ex. 1F/77-78) and problems with motivation (Ex. 10F). He reported difficulty focusing (6E, 5F, 10F, Hearing Testimony) and has a diagnosis of ADHD (Ex. 1E, 5F, 10F). However, he was also noted to have good concentration (Ex. 1F/95, 10F, 7F, 8F). He said he enjoyed watching television and fishing (Ex. 1F/77-78, Hearing Testimony).
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. He reported some depression (Ex. 1F/66, 77-78; 5F; 8F;10F; Hearing Testimony). However, Celexa was helpful (Ex. 1F/93, 95), and he frequently had normal mental status exams (Ex. 1F/69, 83[,] 87; 10F). He was able to take care of his blind mother (Ex. 5F, 10F), perform his personal care; follow a daily schedule;

11

cook a variety of meals using the stove and oven; and do household chores, including laundry, lawn care, and shopping (Ex. 1F/98).

(R. 27). The ALJ also concluded that the evidence failed to establish the C criteria of Listing 12.04 or the A criteria of Listing 12.05 and supported his conclusion with citations to evidence in the administrative record. (R. 27–28).

Claimant challenges none of the ALJ's specific findings regarding the unmet criteria, and the burden is on the claimant to demonstrate that he meets *all* the requirements of a Listing. *Sales v. Saul*, No. 1:19CV476, 2020 WL 4735308, at *3 (M.D.N.C. Aug. 14, 2020) (citing *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016)). Claimant fails to discuss each of the listing requirements and argues only that his intellectual disability satisfies Listing 12.05 based on his low IQ. Pl.'s Br. [DE-15] at 12–14; Pl.'s Reply [DE-19] at 5–6. A low IQ alone, however, is insufficient to meet or equal all the necessary criteria of Listing 12.05. *See Christopher S. v. Kijakazi*, No. 3:20-CV-00709, 2022 WL 536685, at *6 (E.D. Va. Feb. 3, 2022) (concluding that although the plaintiff satisfied the IQ requirement of Listing 12.05, he failed to offer sufficient evidence regarding deficits in adaptive functioning, and it is not enough to satisfy only some of the criteria), *report and recommendation adopted sub nom. Christopher R. S. v. Kijakazi*, 2022 WL 528849 (E.D. Va. Feb. 22, 2022); *Williams v. Saul*, No. 1:19-CV-00044, 2020 WL 6608329, at *9 (W.D. Va. Nov. 12, 2020). The ALJ explained why Claimant's impairments did not meet the relevant mental health related listings, and the court can trace the ALJ's reasoning, which was supported by citation to substantial evidence in the record. Accordingly, the ALJ's determination that Claimant's mental impairments did not meet or equal a listing should be affirmed.

### C. The Residual Functional Capacity

An individual's RFC is the capacity the individual possesses despite the limitations caused

12

by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Claimant contends that (1) the ALJ failed to properly consider the totality of his impairments together by discounting his intellectual disability, which precluded completion of an accurate RFC, and failed to provide the minimum rationale and articulation required when evaluating a claimant's symptoms, and (2) the RFC is not supported by substantial evidence because it is contradicted by Dr. Ricci's opinion, and the ALJ failed to identify any opinion consistent with the RFC. Pl.'s Br. [DE-15] at 14–16; Pl.'s Reply [DE-19] at 6–8.

In formulating the RFC, the ALJ discussed Claimant's hearing testimony; his medical records, including those for mental health treatment, COPD, back pain, and hypertension; Claimant's obesity; and the opinions of Dr. Ricci and the state agency doctors who reviewed Claimant's file at the initial and reconsideration stages. (R. 26–36). The ALJ acknowledged Claimant's complaints of depressive symptoms, as well as his ADHD and intellectual disorder, but

13

found that Claimant has "very good adaptive functioning," citing psychological testing from September 2020, which found as follows:

> No adaptive deficits were located in the following areas: Self-Care, Receptive and Expressive Language, Mobility, Self-Direction, and capacity for Independent Living. Inmate RICHARDSON indicated he performs all of his grooming/selfcare without reminders. In terms of Receptive and Expressive Language, Inmate RICHARDSON is able to write letters, and read basic information. He can identify common signs in the community, and he can write his address, phone number, date of birth, and other basic information. Inmate RICHARDSON indicated he has never held a driver's license; however, he knows how to drive. He stated he is able to utilize public transportation on a regular basis, and he can move about the community independently and safely. He reported he cannot afford a car, which has limited his motivation to obtain a driver[']s license. Regarding Self-Direction, Inmate RICHARDSON is able to make decisions regarding where and when to eat, he makes needs for medical treatment known, and he can follow a daily schedule. He has been married for the past 9-years, and he maintains regular communication with his other family members. In terms of his Capacity for Daily Living, Inmate RICHARDSON indicated he cooks a variety of meals, and he uses the stove and oven regularly. He also performs household chores such as laundry, lawn care, and shopping without assistance. He takes medication without reminders, and he can be left alone for sustained periods of time without supervision.

(R. 35, 721). The ALJ also discussed Claimant's more recent medical records from his mental health treatment, which indicated Claimant was largely doing well on his medications. (R. 31–34, 685, 716, 718, 785–814, 828, 881–921). To accommodate Claimant's mental impairments, the ALJ limited the RFC to performing "only simple, routine, repetitive tasks but not at a production rate pace (i.e., assembly line work). He can make only simple work-related decisions and have only occasional interactions with supervisors, coworkers, and the public." (R. 35). Claimant points to no specific medical impairment or evidence that the ALJ failed to consider, and it is not the court's role to re-weigh the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ."). The ALJ expressly considered Claimant's intellectual disability, along with his other

14

physical and mental impairments, in formulating the RFC, and the court can trace the ALJ's reasoning, which is supported by citation to substantial evidence in the record.

Finally, Dr. Ricci's assessment, which the ALJ found to be persuasive, provides no grounds for reversing the ALJ's decision. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 416.945(a)(3). The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 416.920(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 416.920c(a).

Claimant points to Dr. Ricci's findings that he "appears in need of significant training and supervision when attempting new simple tasks," "will have difficulty learning to perform complex tasks independently and may need some support making appropriate decisions due to his limited

15

intellectual functioning," "may have difficulty dealing with the stress of daily work activities depending on tasks requested or required," and his prognosis was "guarded." (R. 824). But the ALJ considered each of these findings in evaluating Dr. Ricci's opinion and found it to be consistent with the medical records indicating Claimant had limited intellectual functioning and Dr. Ricci's exam findings. (R. 36). And the ALJ included limitations in the RFC to address the deficits found by Dr. Ricci. For example, the RFC precludes complex tasks and work-related decision making, as well as production rate pace or assembly line work and interactions with others, (R. 35), which are limitations aimed at reducing the complexity and stress of daily work activity. Dr. Ricci also found that Claimant appeared "capable of maintaining basic attention and supervision when attempting new simple tasks," "was able to recall and understand instructions, appear[ed] to work deliberately and orderly with self-correction with reflection and deliberation based on current ability," "[a]ttention and concentration were adequate for testing," and "[t]here is no evidence of any significant emotional distress during the evaluation." (R. 824). The ALJ evaluated Dr. Ricci's opinion as required by the regulations, found it to be persuasive, and adopted limitations to account for the deficits Dr. Ricci identified. The ALJ's RFC is also supported by the opinions of the state agency doctors, which were largely consistent with that of Dr. Ricci. (R. 36, 85–94, 96–103). Accordingly, Claimant has failed to demonstrate error in the ALJ's evaluation of Dr. Ricci's opinion or in the RFC assessment.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 15, 2025** to

16

file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the \_\_1\_\_ day of July 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

17